31 So.3d 115 (2009)
Willie JONES
v.
Ray RUTH.
2080249.
Court of Civil Appeals of Alabama.
July 24, 2009.
Certiorari Denied September 11, 2009 Alabama Supreme Court 1081484.
*116 Thomas E. James of Morris, Haynes & Hornsby, Birmingham, for appellant.
William A. Austill of Austill, Lewis & Pipkin, P.C., Birmingham, for appellee.
MOORE, Judge.
Willie Jones appeals from a summary judgment entered by the Montgomery Circuit Court in favor of Ray Ruth in a civil action based on §§ 25-5-11(c)(1) and (c)(2), Ala.Code 1975. We reverse.
Jones, a maintenance worker employed by Flowers Bakery, received severe injuries to his left hand as the result of an accident arising out of and in the course of his employment on October 29, 2006. Jones executed a settlement agreement on June 25, 2008, releasing various claims associated with his injuries. Paragraph 9(B) of the agreement Jones signed states, in pertinent part:
"B. SETTLEMENT OF COMPENSATION BENEFITS, VOCATIONAL BENEFITS, AND ANY AND ALL RIGHTS TO REOPEN THE CLAIM UNDER ALA. CODE § 25-5-57(a)(3)i (1975) AND ANY AND ALL CLAIMS REGARDING WRONGFUL TERMINATION AND RETALIATORY DISCHARGE
"The parties have agreed to settle this claim on a compromise basis. The *117 sum of Fourteen Thousand Dollars and No Cents ($14,000) represents the complete and total lump sum settlement to [Jones] under the Worker's Compensation Act of the State of Alabama for any and all claims made or which may be made, arising under the Alabama Workers' Compensation Act, including, but not limited to, disability compensation benefits vocational rehabilitation services owing or alleged to be owing by [Flowers Bakery] to [Jones] arising out of the accident and claims referred to herein, and any and all rights to reopen the claim under Ala.Code § 25-5-57(a)(3)i. (1975), and any claims for wrongful termination or retaliatory discharge. By entering into and accepting the benefits of this settlement, [Jones] releases and fully and finally discharges [Flowers Bakery] and its employees ... from any claims for disability benefits, vocational rehabilitation benefits, and any claims for wrongful termination and/or retaliatory discharge, and any employment status related claims as may be made."
(Bold typeface in original.)
On that same date, the Montgomery Circuit Court approved a petition seeking approval of the settlement agreement, pursuant to § 25-5-56, Ala.Code 1975 (requiring circuit court approval of certain settlements affecting an employee's right to workers' compensation benefits). In the judgment approving the settlement agreement, the court incorporated the language from Paragraph 9(B) of the settlement agreement.
About a month following the execution of the settlement agreement and the entry of the judgment approving the settlement agreement, Jones filed a civil action in the same circuit court against Ruth. In that action, Jones alleged that Ruth had caused his injuries by willfully and intentionally removing from a machine a safety guard or safety device provided by the manufacturer of the machine with full knowledge that injury or death would likely or probably result from the removal. See Ala.Code 1975, § 25-5-11(c)(2). Jones also claimed that Ruth had willfully and intentionally injured him in violation of Ala.Code 1975, § 25-5-11(c)(1). In addition, Jones claimed that Ruth had negligently or wantonly designed the machine at issue.
On September 9, 2008, Ruth filed a motion to dismiss or, in the alternative, a motion for a summary judgment. In that motion, Ruth argued that the settlement agreement barred the claims filed by Jones and that Jones's complaint asserting claims of negligence and wantonness did not state a claim for which relief could be granted. See Ala.Code 1975, §§ 25-5-52 and 25-5-53 (barring co-employee actions, except those based on willful conduct). After holding oral argument, the trial court entered a summary judgment in favor of Ruth. Jones filed a timely notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Jones argues that the trial court erred in entering the summary judgment on his §§ 25-5-11(c)(1) and (c)(2) claims.[1] Jones maintains that the trial court incorrectly concluded that he had released those claims.
"In the absence of fraud or ambiguity, a release supported by valuable consideration will be given effect according to the intention of the parties, which is to be judged by the court from what appears *118 within the four corners of the instrument itself, and ordinarily parol evidence is not admissible to impeach or vary its terms."
Johnson v. Asphalt Hot Mix, 565 So.2d 219, 220 (Ala.1990) (citing Trimble v. Todd, 510 So.2d 810 (Ala.1987); Jehle-Slauson Constr. Co. v. Hood-Rich Architects & Consulting Eng'rs, 435 So.2d 716 (Ala. 1983); and Ala.Code 1975, § 12-21-109). A settlement agreement is a contract and is to be construed like any other contract. See Jones v. Bullington, 401 So.2d 740, 741 (Ala.1981). A written release must be given effect according to its plain terms. Hartford Accident & Indem. Co. v. Cochran Plastering Co., 935 So.2d 462, 471 (Ala.Civ.App.2006).
In this case, the first clause of the second sentence in Paragraph 9(B) provides that Jones releases "any and all claims made or which may be made, arising under the Alabama Workers' Compensation Act...." Ruth argues that, pursuant to Sanders v. Southern Risk Services, 603 So.2d 994 (Ala.1992), and Gates Rubber Co. v. Cantrell, 678 So.2d 754 (Ala.1996), that phrase should be construed broadly to include claims under §§ 25-5-11(c)(1) and (c)(2). In Sanders, a worker settled his workers' compensation claim against his employer. In that settlement agreement, the worker agreed to accept $7,500 "`in full settlement of any and all claims for compensation benefits due and rehabilitation or retraining benefits due under the Workmen's Compensation Act of the State of Alabama.'" 603 So.2d at 995. The settlement agreement further provided: "`When payment hereunder has been made the employer shall be, and hereby is released from all claims on account of said injury, under said Act or otherwise.'" Id. The worker subsequently sued his employer and its third-party workers' compensation administrator asserting claims of retaliatory discharge, fraud, and the denial of rehabilitation expenses. 603 So.2d at 994. In discussing the effect of the settlement agreement on the claim of retaliatory discharge, the supreme court stated: "Unless there is evidence of fraud, a settlement of an employee's claims under the Workmen's Compensation Act is conclusive of any other claims the worker may have." 603 So.2d at 995. The court ultimately held that the settlement agreement unambiguously released the employer from "all other obligations" to the worker, except its obligation to pay future medical expenses. Id. at 996.
In Cantrell, Cantrell entered into a written workers' compensation settlement agreement, which provided, in pertinent part, that in exchange for $25,000 Cantrell would release Gates Rubber Company and its workers' compensation insurance carrier
"`from any and all liability now accrued or hereafter to accrue for compensation and vocational rehabilitation benefits under the workmen's compensation laws of the State of Alabama, or otherwise, due or arising out of [Cantrell's work-related] injury of August 19, 1990, or any other accidental injury sustained by [Cantrell] while employed by [Gates Rubber Company]. ...'"
678 So.2d at 754-55 (emphasis omitted). Nine months later, Cantrell filed a retaliatory-discharge action against Gates Rubber. Relying heavily on its holding in Sanders, the supreme court held that
"a `settlement of any and all claims for compensation benefits due and rehabilitation or retraining benefits due' is `conclusive of any other claims,' unless there is evidence of fraud, ... or the claim in issue is expressly excepted from the settlement agreement."
678 So.2d at 756 (quoting Sanders, 603 So.2d at 995).
*119 Sanders and Cantrell only tenuously support Ruth's argument that a release of "any and all claims arising under the Alabama Workers' Compensation Act" should be construed to bar actions under §§ 25-5-11(c)(1) and (c)(2). Most notably, neither case concerns the effect of a workers' compensation settlement agreement on a claim against a co-employee based on those subsections. In Sanders, the supreme court did hold that the language of the settlement agreement barred a claim for rehabilitation expenses made against the third-party administrator, but only because the settlement agreement specifically addressed that claim. 603 So.2d at 995. In both cases, the broad language that a release of workers' compensation benefits also releases other claims, except those expressly reserved, referred solely to claims based on retaliatory discharge under § 25-5-11.1, Ala.Code 1975.
The supreme court directly addressed the effect of a workers' compensation settlement agreement on claims under §§ 25-5-11(c)(1) and (c)(2) in Dudley v. Mesa Industries, 770 So.2d 1082 (Ala.2000). In Dudley, a worker received personal injuries in an industrial accident in 1996. In 1997, the worker brought a civil action against his employer, Mesa Industries, for workers' compensation benefits; he later amended his complaint to state a claim against the employer based on an alleged violation of § 25-5-11(c)(2).[2] In 1998, the worker entered into a settlement agreement with Mesa, pursuant to which Mesa was "`released and forever discharged from any and all claims for compensation and vocational rehabilitation benefits due or which may become due to the [worker] under the Workmen's Compensation Act of Alabama.'" 770 So.2d at 1083. The circuit court approved the settlement agreement, but at the same time it granted the worker leave to amend his complaint. The worker later amended his complaint to allege fraud and tort-of-outrage claims against Mesa and to assert a third-party claim against Fluke Corporation. Id. Both Mesa and Fluke moved to dismiss the action on the ground that the settlement agreement had terminated the litigation, depriving the circuit court of subject-matter jurisdiction. The circuit court dismissed all the claims, concluding that its judgment approving the workers' compensation settlement agreement had finally adjudicated all pending claims and that the subsequent amendment was, therefore, ineffective.
"In other words, the circuit court held it had no jurisdiction to consider the amended complaint filed after March 13, 1998. Thus, it is apparent that the trial judge thought his order releasing Mesa from the workers' compensation and vocational-rehabilitation claims also released Mesa from the claim made pursuant to § 25-5-11."
770 So.2d at 1083.
On appeal, the supreme court considered the "ultimate issue" to be whether the judgment approving the workers' compensation settlement agreement had adjudicated only the workers' compensation claim against Mesa or whether it also had adjudicated the § 25-5-11(c)(2) claim. Id. In deciding that issue, the supreme court acknowledged that the circuit court had ruled that it had finally adjudicated all the pending claims against Mesa when it had approved the workers' compensation settlement agreement, but the court stated further that
"we cannot ignore the language of the order itself or the trial court's conduct *120 after it entered that order. The wording of the [order approving the workers' compensation settlement agreement] and the trial court's allowing [the worker] to amend his complaint strongly suggest that the trial court intended for a portion of the lawsuit to continue."
770 So.2d at 1084. As to the terms of the settlement agreement, the court noted that, in Johnson v. Asphalt Hot Mix, supra, it had specifically held that an action under § 25-5-11 is a tort action for damages and not a claim for workers' compensation benefits. It also stated:
"Based on the foregoing, we conclude that the language used by the trial court in its [order approving the settlement agreement] releasing Mesa from all claims for `compensation and vocational rehabilitation benefits' arising under the Workers' Compensation Act applied only to [the worker's] claim for workers' compensation and vocational benefits. Therefore, [the worker's] claim, which was pleaded based on § 25-5-11, survived. Consequently, based on this record, we conclude that the trial court's order that `[Mesa] be released and forever discharged from any and all claims for compensation and vocational rehabilitation benefits due or which may become due to the [worker] under the Workmen's Compensation Act of Alabama' did not adjudicate all the claims in [the worker's] lawsuit."
770 So.2d at 1084-85. In a footnote, the supreme court also mentioned that "there are no indications that the trial court, at that time, intended a full adjudication, because of the fact that when it entered its order it simultaneously granted [the worker's] motion for leave to amend his complaint." 770 So.2d at 1085 n. 2. The court therefore reversed the judgment dismissing the action.
Notably, two justices, Chief Justice Hooper and Justice See, dissented from that portion of the opinion in Dudley reversing the dismissal of the § 25-5-11(c)(2) claim. 770 So.2d at 1085. Relying on Cantrell, supra, and Sanders, supra, the dissent reasoned that the language of the settlement agreement should have been construed broadly so as to release Mesa from all claims the worker may have had against Mesa, including the § 25-5-11(c)(2) claim. The seven justices in the majority obviously rejected that reasoning by voting to concur in the reversal of the judgment.
Ruth argues that Dudley should be construed as holding that a settlement agreement releasing all claims "arising under the Alabama Workers' Compensation Act" also releases §§ 25-5-11(c)(1) and (c)(2) claims unless those claims are pending at the time the settlement agreement is entered. We acknowledge that, in Dudley, the § 25-5-11(c)(2) claim was pending at the time the judgment approving the workers' compensation settlement agreement was entered, but that procedural fact does not detract from the core holding in Dudley that a settlement of claims for workers' compensation benefits does not release claims under §§ 25-5-11(c). Dudley strongly supports Jones's position that the workers' compensation settlement agreement at issue in this case does not release his claims against Ruth.
However, the language of the settlement agreement in Dudley is not identical to the language of the settlement agreement in this case. In Dudley, the worker released only "`claims for compensation and vocational rehabilitation benefits due or which may become due to the [worker] under the Workmen's Compensation Act of Alabama.'" 770 So.2d at 1083. In this case, Jones released "any and all claims made or which may be made, arising under the *121 Alabama Workers' Compensation Act, including, but not limited to, disability compensation benefits vocational rehabilitation services...." Ruth argues that, unlike the settlement agreement in Dudley, the settlement agreement in this case includes all claims "arising under the Alabama Workers' Compensation Act," not just claims for workers' compensation benefits. Ruth maintains that §§ 25-5-11(c)(1) and (c)(2) claims "arise under the Alabama Workers' Compensation Act" and that, therefore, the settlement agreement includes those claims even if they are not expressly mentioned therein.
Our supreme court has stated that whether a claim "arises under the Alabama Workers' Compensation Act" depends primarily on whether the claim may be considered a traditional workers' compensation claim resulting from an occupational disease or accidental injuries. See generally Jackson County Hosp. v. Alabama Hosp. Ass'n Trust, 619 So.2d 1369, 1371 (Ala.1993). Tort claims, although based on occupational injuries, are premised on different standards of proof and different measures of damages than claims for workers' compensation benefits and are not considered to "arise under" the Act. Id. Pursuant to Johnson, supra, and Dudley, supra, the supreme court has already decided that a claim under § 25-5-11(c) is a tort claim for damages, which is substantively different from a traditional workers' compensation claim. Hence, under the foregoing reasoning, the claims Jones has made against Ruth would not be considered as "arising under" the Act even though they are contained in the Act.
The settlement agreement further discharges "any claims for wrongful termination and/or retaliatory discharge, and any employment status related claims as may be made." Ruth argues that the phrase "employment status related claims" includes claims under §§ 25-5-11(c)(1) and (c)(2) because, he says, those claims are based solely on Jones's status as an employee. Jones, on the other hand, maintains that "employment status related claims" concern only claims asserting sexual harassment, discrimination, wrongful termination, or other similar causes of action based on adverse employment decisions.
The settlement agreement does not define the phrase "employment status related claims"; however, we conclude that that phrase unambiguously releases claims for damages arising from the alteration of, or injury to, Jones's employment status with Flowers Bakery and not to claims for damages arising from personal injuries received by Jones due to, or based on, his identity as an employee of Flowers Bakery. "Employment status" generally refers to the entire legal relation between the employer and the employee. See Tidwell v. City of Memphis, 193 S.W.3d 555, 563 (Tenn.2006). In the legal context, claims related to employment status ordinarily refer to claims seeking damages for injuries to that relation, such as discriminatory acts that affect the terms, conditions, or benefits of the employee's employment. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004). Had the parties to the settlement agreement intended Jones to release personal-injury claims against his co-employees, they would not have used the phrase "employment status related claims" in the settlement agreement but, rather, would have used words more apt to that purpose.
"When the language of a release specifically limits the scope of the release, the release will not bar claims outside the scope of the release." Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala. 1999). Because the §§ 25-5-11(c)(1) and *122 (c)(2) claims Jones has filed against Ruth are outside the scope of the specific language of the settlement agreement, we conclude that the trial court erred in entering the summary judgment in favor of Ruth. We therefore reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs specially.
BRYAN, Judge, concurring specially.
Our supreme court's analysis in Jackson County Hospital v. Alabama Hospital Ass'n Trust, 619 So.2d 1369, 1370-71 (Ala. 1993), compels me to conclude that Willie Jones's claims based on §§ 25-5-11(c)(1) and (c)(2), Ala.Code 1975, do not "arise under" the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975. Therefore, I agree that Jones's release of "any and all claims ... arising under the Alabama Workers' Compensation Act" does not include his claims based on §§ 25-5-11(c)(1) and (c)(2).
NOTES
[1] Jones does not argue that the trial court erred in entering the summary judgment on his negligence and wantonness claims; thus, we do not address those claims further.
[2] Section 25-5-11(c)(2) does not provide a cause of action against an employer, but the employer did not raise that issue in Dudley. 770 So.2d at 1085 (Hooper, C.J., dissenting).